The next case up for argument and actually our last case to be argued today is Zoellner v. City of Arcata Zoellner v. City of Arcata Zoellner v. City of Arcata Thank you for the opportunity and may I please the Court. I'd like to reserve five minutes for rebuttal please. I'll start with addressing the issue of lack of probable cause first and then I'll get into the concealed records summary judgment and hopefully if I have time with the additional issues raised in the brief. As this Court is aware, the jury returned the verdict in my client's favor exceeding $756,000 and in addition to that award, the jury made a finding of fact that is not challenged here. And the finding that the jury made was that Detective Locey was actively involved in causing Kyle Zoellner to be prosecuted or actively involved in continuing the prosecution. That is a significant fact in this case. There are several, several strong evidence Can I just add, you mentioned the jury verdict. That was just against Detective, the detective, right? That was not against any of the other defendants? Yes, Your Honor. At the summary judgment, the only defendant that survived was Detective Locey and the other ones were dismissed and I'll address that issue. There are several strong reasons that the evidence relating to lack of probable cause should not be re-litigated. First, the DA, the murder and the stabbing occurred on early Saturday morning hours on April 15th. On April 17th, a majority of the investigation relating to interviewing the witnesses were done during the weekend. On April, on Monday, April 17th, the detectives, Detective Locey and Detective Dockweiler, met with the DAs in the afternoon and with their research team and the DA made a very, very express statement to them that she will not be filing criminal charges. There's no probable cause and she also stated to them that they need to present evidence relating to an eyewitness. After the police chief, Chapman, presented the evidence of the false evidence of eyewitness testimony, the DA finally decided to file the murder charges. Then after several, actually five days of hearing, live testimony, hearing from Detective Locey, hearing from Detective Dockweiler, Harris Wright and so many others and also forensic evidence such as fiber on the knife, fingerprints and so on, the criminal court, the state criminal court found no probable cause. And that finding is significant and it becomes even more significant because if you look at it, two years later the detectives continue to investigate the case. And they've used the Department of Justice criminal division in helping them with developing DNA testing forensic and they brought in other experts to assist them in developing the case and they recommended again to the DA's office to bring criminal charges against Kyle Zollner. And the DA pretty much said, I'm not going to bring it and I'm going to name panel a criminal grand jury. One was assembled, 25 witnesses testified, several evidence were presented including DNA and the criminal grand jury declined to return a bill of indictment, finding pretty much no probable cause. This court in 1994 on Humpt v. Dillard specifically said, we conclude that the probable cause determination of preliminary hearing was sufficiently conclusive of the issue to preclude its re-litigation. And I think that's why we are emphasizing that the issue of probable cause should not be re-litigated. Even if the court disagrees with that and even if the court believes that it should be re-litigated. You say it shouldn't be re-litigated. Are you saying there's some bar to re-litigating it or just that the first finding was more persuasive and we should go with that one? Your Honor, I believe once the criminal court in the state made that determination and based on this backdrop that I just described, I don't believe re-litigation would be significant and important because there are no additional facts that needed to be added in there. In fact, if it's being re-litigated, there should be a strong presumption that there is no probable cause. And then the burden should shift on the other side to show whether there was sufficient evidence that would overcome what the findings from the State court was. And that was not done. And if you look at the evidence that was presented, they did not present a single evidence that would negate what would Judge Reinholzen found in the State court or the criminal grand jury found or any or the D.A. initially found that declined to file the criminal charges. This case — Does qualified immunity come into this at all in terms of the second prong, the clearly established? Your Honor, it doesn't because qualified immunity would not come into play when there is a fabrication of evidence by the police officers. And if you look at it, when the detectives met with the D.A. on the 17th, they had already interviewed the key witness called Jason Martinez, whose statement was falsified. And at that time, they knew who Martinez was and what Martinez had said. And at that meeting, they provided all the information they had, and the D.A. declined. Only after the D.A. had requested an eyewitness, then they changed their story and fabricated the evidence relating — Wait. Help me understand the fabric. Who fabricated what evidence? So, Your Honor, Detective Locey, Detective Dockweiler, and the chief of police Chapman, they changed the story of a witness called Jason Martinez. I didn't get that from reading this. You're going to have to explain that better because, I mean, I know there was — I know that they — I know that there was some — later found that Martinez didn't actually identify Zollmer, but that's different than fabricating the evidence. Well, Your Honor, the court — actually, the jury found it to be fabricated as well. It wasn't malicious fabrication. No, it wasn't. It was malicious prosecution. It was, Your Honor, but let me explain. Let me see if I can clarify my point. Jason Martinez testified — I'm sorry, not testified. He made a statement to Detective Locey that he was at the party and he was walking from a distance and he saw someone stab Mr. Lawson. And that was enough. That was — that was all the description that was given. He never described the physical — Zollmer. — physical appearance of the person he saw. I understand. No description whatsoever. And he never identified Zollmer. So we don't have a description, nor do we have an identification. But where did — where does the fabrication suggest that Detective Locey later came in and changed the testimony of Martinez? Is that what happened? Yes, Your Honor. He prepared a written report. And in his written report, he described precisely what he believed or what he had alleged that Jason Martinez had told Detective Locey. That information was also repeated in Detective Duckweiler's charging summary that was submitted to the DA's office. And prior to that, which this evidence was withheld from us until the third day of trial, was submitted by chief of police, Chief Chapman, to the DA's office with regards to that there was an eyewitness relating to this, which none of them were true. No, that's not — there was an eyewitness. What the eyewitness said is what's being contested here. I mean, Martinez said he saw the stabbing. There's no dispute about that. Absolutely, Your Honor. But Martinez didn't identify Zollner. But I didn't read anything in Locey's statement that said he did identify Zollner. He drew some inferences from that, which may or may not have been correct. But that's — I just — the falsification of evidence is a different — I just had not viewed that in this case. So that's why I'm having a hard time. I think you're taking some liberties there. Well, Your Honor, I would ask the Court to maybe look at the written report that was prepared by Martinez because — I'm sorry, by Locey, because that detect — that report, that written report — Where is that in the — I was just going to look for that. Where is that in the record? Your Honor, if you give me a moment. But — Yeah, OK. Look for that for everybody. Let me ask you this question. If we were to affirm based on qualified immunity, which I think is what the district court focused on, is that correct? On the malicious prosecution claim. No, Your Honor. The district court actually found probable cause. But — So we — No, but it — OK, back up. There was a malicious prosecution claim. The district court said Zollner has not satisfied — so this went to the jury with the exception of the probable cause issue, right? Your Honor, I think I need to separate the two. There was a malicious prosecution against three officers. Right. It was Duckweiler, Locey, and Chapman. Judge Chen at the NSJ basically dismissed those two, Duckweiler and Chapman, with respect to malicious prosecution and other claims. So the sole remaining count was malicious prosecution against Locey. And that went to a jury. That went to the jury. But not on all issues. Not on all issues. The only issue that the district court reserved for itself was the issue of existence or lack of existence of probable cause. The rest of it was submitted to the jury. OK, I thought that's what I — So let's maybe focus on what the district court found in saying there was probable cause, because the district court went through a list of facts and evidence and concluded, yes, this shows there was probable cause. Where do you take issue with that? Your Honor, there are significant issues with that. First of all, there was no evidence that Kyle Zollner had any kind of instrument or knife with him. No one saw him with a knife. Even Parris Wright, who said — we don't know whether he's telling the truth or not, but when he said that he separated the two, he only saw keys. He didn't see the knife. The witnesses that were there said he didn't have a knife. And if you look at the actual knife, the fiber on the knife does not match his clothing. So if that was the other way around, if the fiber on the knife wouldn't match his clothing, the prosecution would have pointed as showing a probable cause, and it would have pointed as to existence of his guilt. But that didn't exist. His fingerprint was not there. So — Well, so these are arguments to me as to why, if he had been tried, he might have prevailed. But the question here is probable cause, and it seems the standard would be lower. Absolutely. The standard for probable cause is lower, Your Honor. But I think it's the totality of circumstances. We cannot just focus on one. We need to look at each and every evidence that's there. The second thing that is critical is Officer Arminio testified at the preliminary hearing that the murder occurred or the stabbing occurred on the driveway where the pool of blood was. And Officer Arminio and also Detective Losi searched the grassy area where the fight occurred between Kyle Zollner and Mr. Lawson. And in that area, there was no blood. And she had testified, and I'll draw the Court's attention to page 2715. She was very specific, saying witnesses told her that's where the stabbing occurred. She's making references to that, and I think that's a critical part. And when you look at also the other significant fact, Your Honor, is that when Officer Nilsen or detained Kyle Zollner, based on his own testimony at the preliminary hearing, he testified that when he arrived he was the first officer who arrived. When he arrived, he asked everybody, where is the victim? And people showed him Kyle Zollner, and he picked it up and put it in his car, not knowing who he was. They changed the story. But if you look at the preliminary hearing, he testified he was looking for a victim. And I think that's a crucial point with respect to that. The other part of it that is significant with respect to probable cause, which both the district, I'm sorry, the State Court, and also if you look at the evidence that was presented to the grand jury, points to the fact that there was no probable cause were his, Nilsen, I mean, Kyle Zollner's clothing is significant. His shoes were clean. His hands were clean. They were talking about having blood on his clothes. They never presented a single evidence that the blood that was on those clothing belonged to Mr. Lawson. There's no evidence before it. And there's testimony that Mr. Zollner suffers from severe blood issue relating to his nose, bleeding from his nose. His father testified. He testifies as a child. Every time there was any kind of a minor impact, he was bleeding very heavily, and that could be easily explained. But just having blood on your clothes and not having anything on the knife and not having, and the other issue that I think Judge Reinholson emphasized was really critical. He said Paris Wright testified that when he got to them, Lawson had Kyle Zollner in a body lock and a headlock. So his arms couldn't be moved. His head couldn't be moved. His back was to Lawson's front, basically, where he was stabbed. There was no time, even if he had a knife, there was no time for him to discard the knife in such a distance. The distance between where the fight took place and where the knife was found was a significant distance. And they only found them with keys, conflicting at best, but it does not rise to the level of probable cause. I'm sorry for interrupting. Did you want to save a little bit of time for rebuttal? Yes. I apologize. Good morning, Your Honors. May it please the Court. Laurie Sobranski on behalf of Defendants and Appellants. Besides answering whatever questions the Court might have this morning, I also would like to focus on probable cause, which is, as you recognize, the heart of this case. Can I? Because I think I might have gotten myself a little tied up in the opening argument. There's different probable causes we're dealing with here, right? Because Nelson has a different probable cause to arrest. Losey has a different probable cause to continue the prosecution. No, it's the same probable cause for everyone. All the officers are bound by the same standard of probable cause, which is the fair probability. There must be a significant chance that the crime had occurred. But they each would have known different facts. So isn't probable cause analyzed differently per defendant? No. No, Your Honor, because it's the collective knowledge of all the officers. So in this kind of a situation where there's an investigation and an arrest, the knowledge of one of those officers that's participating in this investigation is imputed to the others under the collective knowledge doctrine. It's actually cited in our brief. But so for probable cause purposes, the same information is relevant to all of these officers, and the same probable cause inquiry and decision will apply to both the malicious prosecution claim and also to the unlawful arrest claim. Right, but we can't. I mean, Nilsen was the first on the scene. His knowledge gets imputed later, but we can't impute knowledge to him of things that were learned later. That doesn't — I don't think we could do that. Well, I think — well, Nilsen's involvement actually ends after that first day on the scene. Right. So after that, it's Detective Dockweiler and the other officers, Losey in particular, that are helping with the investigation. What all of those officers are learning in those next days where the investigation is unfolding, all of that information is imputed to each of them. They're communicating with each of them, too. It's not as if they're operating independently. They're talking to each other. They're sharing information about interviews and so forth. In those few days after the arrest on the 15th when the stabbing happened, there were at least 15 witnesses that were interviewed, and the wheels were turning. The investigative wheels were turning as quickly as they could possibly turn. So your friend on the other side said, you know, we shouldn't re-litigate this issue, kind of referencing what happened in the State court. How do you respond to that? Yeah. This is, I think, a fundamental issue here. The preliminary hearing in the criminal matter in State court was excluded from evidence in the trial. Probable cause was tried in this civil case that we are here for now. It was tried in the district court. The evidence and the preliminary hearing proceedings were all excluded. The court determined there was no — this issue was actually raised in plaintiff's in limine motion, and the district court decided there was no privity between Officer Losi and the parties to the criminal action, and therefore, plaintiff could not preclude Officer Losi, who was not a party to the original proceeding, from re-litigating probable cause. Okay. Help me understand this, because as I'm reading ER 27 from the district court's order on probable cause, it says, Mr. Zollner asked the court to take judicial notice of the State court judge's lack of probable cause finding following the preliminary hearing. The court does so. That doesn't seem consistent with the motion. It wasn't. Yes. It wasn't the lack that — what the court is saying is she was going to take judicial notice that it happened, but the evidence of the preliminary hearing and the decision of the preliminary hearing was not — she held was not binding, and the — and so none of the evidence from the preliminary hearing was presented in the trial in this case on probable cause. The court said that the question here is different whether a reasonable officer in Mr. Losi's circumstances would have believed there was a fair probability that Zollner stabbed Losi. Well, the court was really saying it was a legal basis for her decision, which was you cannot invoke issue preclusion against Officer Losi because he was not a party to the original criminal proceeding, so there was no privity. And what is really important about this, Your Honor, is that decision — this was on a motion in Limine that Plainiff brought. The decision to exclude the preliminary hearing evidence and the — and to bind Losi with the preliminary — with the criminal court's decision was not challenged on this appeal. The merits of that are not challenged. So when we talk about probable cause and the analysis — It's only the Federal court's analysis and evidence that was presented at the Federal court's trial that we can consider. There's no challenge to the original — I just want to make sure I'm clear on what we're deciding. Yes. Because now I — I hope that explains. Well, hold on. Let me ask — let me ask some questions. So right now there's a jury verdict but for probable cause. Then the district court, Federal district court said there's no probable cause for — or excuse me, there is probable cause as to Losi. That's why the jury verdict was not given any efficacy. So we're being asked whether the district court erred in making a probable cause finding as to Losi, correct? That's correct. We have to decide that question. That is the fundamental question that underlies the malicious prosecution claim against Losi and everybody else and also the unlawful arrest claim. So we cannot just decide and say, hey, there's qualified immunity for those counts. We actually have to reach the malicious — or excuse me, we have to reach the probable cause determination. I think you — I think the court could decide, as always, you could decide qualified immunity without deciding a constitutional violation if you get to the clearly established prongs. And that would still — that would still uphold the district court's probable — it would just uphold it on a different basis. It would uphold it, I think, on a different basis. I mean, I — if you — if this Court were to say we're not going to review the probable cause hearing on the merits of it, but it — because it doesn't matter, because there would be qualified immunity for a lack — That would get you to the same place. For a lack of clearly established precedent, which would have to be the basis. Right. We can go the other way, too, given that the district court reached the probable cause determination. We can — we can say that the probable cause determination was properly supported and not breached the qualified immunity precedent. Absolutely. And actually, that's the way I've kind of viewed this case. I mean, I believe qualified immunity would apply regardless because of the facts of — of what happened here. I don't think any — there's any clearly established law that would tell an officer there was not probable cause to arrest this gentleman at this — under these facts. But I also — I really feel the probable cause evidence in this case is so strong. And the district court wrote a very nice decision on this matter that really kind of laid it out. And that would cover the unlawful arrest and the malicious prosecution. It covers the malicious prosecution and the unlawful arrest. But then we get into deliberate indifference. The district court relied on qualified immunity for deliberate indifference. Yes, it did. But that's a separate issue unrelated to the probable cause. Actually, the district court on the malicious prosecution claim found there was no malice. On the summary judgment part, it said there was no malice for the — for the folks that had been sued on that claim except for Losey, and that went to trial. But qualified immunity, the district court found on summary judgment in respect of the unlawful arrest claim and the deliberate indifference claim. All right. So I'm not sure I understood that before now. Deliberate indifference also went to the jury for Losey? No, no, no, no, no. Oh, okay. The only — the only matters that went to the jury was the malicious prosecution claim against Losey. That's what I thought. Okay. That claim involved as an element of it probable cause. So probable cause was determined there. All of these other peripheral claims that we're talking about, the deliberate indifference, the defamation — That's the Chen's order. All of those came up on the summary judgment motion before Judge Chen. But probable cause has to be decided based upon the evidence that was presented to the district court in the malicious prosecution claim against Losey. It's a complicated procedure. And you — but you say that because that's the most full record of probable cause in this case? That's the — that is the record. That's the most full record of probable cause in this case, for sure. And that was where, as always, you know, there's a trial on the same issue that has been decided on summary judgment. The trial record supersedes the summary judgment record. There's no reason to make a decision on a summary judgment record when the matter has been tried. Witnesses have actually testified. They have been cross-examined. The court can see them and judge credibility and so forth. So that's the full record, and that's what takes precedence. If the Court would mind, I'd like to talk about some of the probable cause facts, unless the Court would like me to discuss one of these other issues. No, I think you should, because, I mean, the other side has walked through their version of the facts, so I'd like to hear yours. Yeah. The probable cause. Obviously, the standard is familiar. I won't belabor  There is one point I do need to raise, though. In the reply brief, plaintiff mentioned that the standard of review for the probable cause determination is clear error. I agree with that. So the standard, I agree that the standard of review here is very, very deferential to the drug court. Well, for the factual findings, right? For the whole thing. I think for the whole thing. Because the whole thing is based on factual findings. Because the whole thing. And, and, because in this particular case, the plaintiff agreed at trial that the facts relating to the probable cause were undisputed. So there were no disputed facts, and the jury made no factual findings related to the probable cause. It was all before the record. The Court did it as a matter of law, based upon the evidence that was presented. But another, when we, when we think about probable cause, and I, this is important because this came up a lot in the argument that we heard, the Court excluded at trial a whole bunch of evidence. And plaintiff constantly refers to this excluded evidence as a basis for his arguments that probable cause was defeated. So we've already talked about the preliminary hearing proceedings. Those were excluded. There's a National Police Federation report that is constantly referenced in the briefing and things. That was excluded. The criminal grand jury proceedings that we heard about this morning, excluded. The civil grand jury report that is, covers the briefing, excluded. Expert reports and DNA evidence, also excluded. None of those evidentiary rulings are challenged on appeal. So all of those evidentiary rulings are in place, and none of that can be considered when we talk about probable cause. The admitted, the evidence on probable cause, which Your Honors might remember from the brief but is, is quite, is quite strong, is this. And remember, this is all undisputed. When Officer Nielsen arrives to the scene within a minute of the dispatch call, witnesses are pointing him to where Mr. Zollner is standing. He goes up to that area. He sees that Mr. Zollner is covered in blood. He learns from Mr. Zollner that Mr. Zollner had been in a fight with this gentleman, Mr. Lawson, when he first got on the scene because he was questioning whether somebody stole the girlfriend's phone. They get into a fight. A witness, Paris Wright, who was very significant, sees Mr. Lawson after the fight, sees Mr. Lawson walking down the hill, talks to him. He is not stabbed. Everything is fine. A few minutes later, Paris Wright hears a scream, looks up the hill, sees Mr. Zollner in a fight with Mr. Lawson. This was fight number two between Zollner and Lawson, in this grassy area that is at the cul-de-sac just by where a red Mustang is parked. And if you, on page 40 of my answering brief, there is a photograph of the cul-de-sac and a little graph that is kind of helpful to just visualize what happened. But Mr. Wright sees Mr. Lawson. He's fine. Turns up. He sees the fight. He runs up. He separates the two that are fighting on the ground. Mr. Lawson is lying with his back on the ground, and Mr. Zollner is on top of him with his back on Mr. Lawson's stomach on front. They're like that. When Mr. Wright pulls them apart, he sees that now Mr. Lawson is stabbed. He had not been stabbed just a few minutes earlier when he saw him on the street. Now he notices that there are two stab wounds. Seven other witnesses also stated that there was a physical fight between Mr. Zollner and Mr. Lawson in that area, and the officers found a kitchen knife that was mentioned underneath the red Mustang that was parked right by where this fight occurred. The knife was definitely big enough to cause these stab wounds. It was a six-inch blade. The officers knew it was unusual for a kitchen knife to be used in a stabbing outside of a kitchen, and they also found out that Mr. Zollner was a chef and had a chef's bag in his car that contained knives. The clothing on the plaintiff was covered in blood. There were large bloodstains on the front and the back of his sweatpants and the front and the back of his hoodie, and there was enough blood that it had soaked through and spotted the white T-shirt that was underneath the hoodie. The amount of blood that they found, the location of the blood and the pattern of it, the officers knew did not match a nosebleed, and it did not match the kinds of injuries that the plaintiff had from the two physical altercations that he'd had earlier that night. No one else that night had been in a fight with Mr. Lawson, and no one else that the officers could discover had any kind of a motive to kill him. What about this distinction between the grassy area and the cul-de-sac where the blood was found? Yes. The chart on page 40 of my brief, I think, would really be helpful if you get a chance to look at it to see what this is. There's a cul-de-sac, and if you look at the photo to the left of it, there's a grassy area where the red car is parked. That's where the fight occurred. The photographs and the evidence showed that from that location, there were blood drops across the cul-de-sac that went to another grassy area on the other side of the street, other side of the cul-de-sac. That is where Mr. Lawson collapsed, and that's where the emergency responders found him. So what happened, and Mr. Wright said he actually saw that Mr. Lawson left the area where the fight and made his crawl across the street to get out of that way until he got to the grass on the other side where he collapsed. There was a lot of blood in the area where he collapsed. There was a lot of blood leading across the street, but it's a trail. So the question is whether it's reasonable for the officers to infer that he moved. He was stabbed over here where the fight happened. He moved across the street where he ultimately ended up, but that blood was his trail of him moving from place to place, and that's what happened. It is true that the officers, when they originally got to the scene, saw the blood on the street and thought, this blood on the street must mean this was maybe the place of the stabbing. But as the investigation unfolded and as they talked to the witnesses on the scene who explained everything, including Mr. Wright, they realized that that was an incorrect assumption to make and that actually he had moved from one place to the other. There are a lot of other pieces of evidence that... Supported the probable cause. That supported probable cause. But the evidence... Can I ask just briefly about this fabricated evidence claim? Yes. Because I hadn't really seen that in this case. Maybe I was not paying close enough attention. But was there a jury finding on fabricated evidence? I thought it was just the jury finding was simply on malicious prosecution. It was. There was no jury finding on fabricated evidence. They were never asked to make that finding. But that was an argument that was made? It was an argument that Plainiff inferred that because they found this — there was a mistake in the police report, absolutely, and Your Honor was exactly right. The officer inferred that Mr. Martinez was referring to Mr. Zollner by name, and he wasn't. But the jury... But that was never changed after the fact or anything like that? No, no, no, no, no, no. When the malicious prosecution case was tried, the jury didn't — they obviously found that that was an error, and they held that that was — that it was malicious. The error was maliciously made. They did not find it was fabricated. In fact, if you look at the — if you look at the note that the jury sent to the court at the end of the deliberations on their verdict, it was talking about probable cause, and of course, now I can't put my hand on it. But the jury asked — the jury said, we would like — we would like the officer, Losi, to just apologize for his reporting error and to acknowledge now the importance of accurate reporting. That's what the jury found. They didn't say for making up evidence out of nowhere. It sounds like they didn't even find that. That was a question. It was just a note. It was just a note that they sent saying, this is what we think. We think this is a learning experience, and this is how. So there was no fabrication. I will say this also on the argument about qualified immunity and fabrication. It is true that at times, if there was fabrication of evidence, qualified immunity would not apply, but that is not true where, as in this case, the other evidence of probable cause exists that would support the action in the first place. So if the only thing we had was a fabricated statement, this guy did it, and that turned out to be false, then no qualified immunity. But whereas here, we have all of this other evidence supporting qualified immunity, then qualified immunity would still apply if the court chose to go down that road instead of just making a decision on the constitutionality of the arrest based on the probable cause itself. All right. Thank you very much, counsel. Thank you. The jury's note was not what my friend is describing. It's part of the records. But I'm going to read from page 3868, which is a written report that was prepared by Officer Locey. He wrote, Martinez stated that when he looked, he saw Zollner stab Lawson. He stated that Zollner held the knife in his right hand, but he was unable to describe the knife. Martinez stated that he believed Zollner struck Lawson with the knife once in the lower chest and once slightly higher. Martinez saw Lawson run across Eastbound, the driveway, and jump into the bushes where he fell, face down. So, a couple things. And your point is, that's fabrication because he didn't identify Zollner. So when he wrote that, that was fabricated. Absolutely right. I understand what you're saying now. And also, Martinez is describing the stabbing occur in the middle of the cul-de-sac. And if you look at the drawings that was prepared by Officer Locey, there's no dripping from the right grassy area to the middle of the cul-de-sac. And the only dripping you see would be from where the pool of blood is to the other side where Zollner, where Mr. Lawson was found. This information, Your Honor, was also repeated on page 3867 by Detective Duckweiler as well. Detective Duckweiler wrote the details and he also talks about how Martinez observed what I just described to you. So these are all part of the records and that's part of what we are saying that was fabricated. And, Your Honor, I wish I had more time to, I think I still have a few more minutes. With respect to jury's findings, the jury also made a finding on page 30. Did Eric Locey act primarily for a purpose other than of bringing Kyle Zollner to justice? And the jury answered yes. I mean, these are significant fact-finding by the jury that should be looked at and considered. And with respect to the probable cause, I just submit on that issue. Now, I just want to quickly focus my issue on Monel claims. You're actually down to 34 seconds. I'll go quick. There was a great deal of records that was hidden from us and those records would have rectified the issues that Judge Chen raised in the MSJ when he partially granted the MSJ. And it should have been included because it also points to the conspiracy part, which should have included Duckweiler and also Chapman within the malicious prosecution and also with respect to the Monel claim. And the defamation, just one quick point, Chapman made the statement to the press the day before he submitted the false note to the DA's office that was never given to us until the third day of trial. And with that, I submit. Thank you very much, counsel, for your helpful arguments this morning. The matter is submitted for a decision by this court. That concludes the argument calendar for today. So we'll be in recess until tomorrow morning.
judges: NGUYEN, NELSON, BRESS